# UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| **C.A.** through their next friend P.A., **C.B.** through his next friend P.B., and **C.C.** through his next friend P.C., for themselves and those similarly situated, | C/A No. 4:23-cv-00009-SHL-HCA |
| **Plaintiffs,** | |
| **v.** | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| **Kelly Garcia**, in her official capacity as Director of the Department of Health and Human Services. | |
| **Defendant.** | |

1

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 4

II.    BACKGROUND AND PROCEDURAL HISTORY ....................................... 5

   A.  The Lawsuit ........................................................................................... 5

   B.  Interim Agreement ................................................................................ 6

   C.  Settlement Agreement ........................................................................... 7

     1. Development of the Relevant Services ............................................. 8

     2. Implementation Plan ........................................................................ 9

     3. Standardized Screening and Assessments ....................................... 9

     4. Data Reporting and Quality Improvement .................................... 10

     5. Appointment of an Independent Monitor ...................................... 10

III.   LEGAL STANDARD ................................................................................. 11

IV.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL .................... 13

   A.  The Settlement Agreement was negotiated at arm's length after significant discovery and is not the product of fraud or collusion. .......................................................... 13

   B.  The proposed final Settlement Agreement provides substantial benefit to the Class, and equitable relief to all Class Members. .......................................................... 15

   C.  The benefit offered by settlement far outweighs the expense and uncertainty of continuing to litigate this case to trial. .......................................................... 16

   D.  Experienced counsel on both sides support settlement. .................... 17

V.    THE PROPOSED CLASS NOTICE IS REASONABLE .................................. 18

VI.   CONCLUSION ........................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Cleveland v. Whirlpool Corp.*, No. 20-CV-1906, 2021 WL 5937403 (D. Minn. Dec. 16 2021) ..... ............................................................................................................................................ 13, 18

*DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171 (8th Cir.1995) ...................................... 12, 17, 18

*Hughes v. Kore of Indiana Enter., Inc.*, 731 F.3d 672 (7th Cir. 2013) ........................................ 19

*In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. 2005) ......................................................................................................................................... 11

*Juris v. Inamed Corp.*, 685 F.3d 1294 (11th Cir. 2012) .............................................................. 19

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371 (8th Cir. 1990) .. 11

*Marshall v. Nat'l Football League*, 787 F.3d 502 (8th Cir. 2015) ......................................... 12, 16

*Murphy v. Harpstead*, No. CV 16-2623 (DWF/LIB), 2023 WL 4034515 (D. Minn. June 15, 2023) ............................................................................................................................................ 16

*Myers v. Iowa Bd. Of Regents*, No. 3:19-cv-00081-SMR-SBJ, 2023 WL 7102158 (S.D. Iowa 2023) ................................................................................................................. 11, 12, 13, 18

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ............................................................... 18

*Phillips v. Caliber Home Loans, Inc.*, No. 19-cv-2711 (WMW/LIB), 2021 WL 3030648 (D. Minn. 2021) ......................................................................................................................................... 11

*Schoenbaum v. E.I. Dupont De Nemours and Co.*, No. 4:05-cv-01108 ERW, 2009 WL 4782082 (E.D. Mo. 2009) ............................................................................................................... 11, 17

*Walkinshaw v. CommonSpirit Health*, No. 4:19-cv-3012, 2022 WL 5255287 (D. Neb. 2022) ....... ............................................................................................................................................ 12, 17

**RULES**

Fed. R. Civ. P. 23 .................................................................................................. 10, 11, 12, 18

## I.    <u>INTRODUCTION</u>

Plaintiffs filed this class action on behalf of Medicaid-eligible children and youth with serious mental health conditions, seeking injunctive and declaratory relief against the Director of the Iowa Department of Health and Human Services (the "Defendant"). Plaintiffs sought to receive services necessary to treat Plaintiffs' mental health conditions and to help Plaintiffs remain in their homes and communities and avoid institutional care. Two years after the filing of this action and more than a year after initiating settlement negotiations, the Parties have reached a proposed final settlement agreement (the "Settlement Agreement," attached as Exhibit 1).

Initially, the Parties spent time litigating the case through motion practice and thereafter negotiated a Protective Order, an ESI Protocol, a Scheduling Order and Discovery Plan, and began significant initial discovery. Shortly thereafter, pursuant to Local Rule 72(b), the Parties jointly sought court-sponsored mediation and to stay the proceedings for three months pending settlement discussions. On August 11, 2023, the Parties held a settlement conference before federal court Judge Ross Walters and submitted mediation briefs prior to the mediation. An interim agreement was reached shortly thereafter and the matter was stayed for the Parties to further negotiate an Implementation Plan and final Settlement Agreement.

During the negotiations, Plaintiffs were represented by attorneys from Children's Rights, the National Health Law Program, Disability Rights Iowa, and Ropes & Gray. Counsel have extensive experience in the areas of Medicaid and disability law. The Parties held frequent detailed meetings over numerous months to discuss, draft, and review the Implementation Plan and negotiate the terms of the final Settlement Agreement.

4

The resulting final Settlement Agreement provides substantial benefits to the Class while removing the delay, risk and expense inherent in the trial of such a complex case. Under the Settlement Agreement, the Defendant has committed to provide Class Members with the intensive home and community-based mental health services identified in Plaintiffs' Complaint and to address the statewide deficiencies that are the basis for this litigation. The Settlement Agreement, if approved by this Court, resolves all claims in this lawsuit and will significantly improve outcomes for Medicaid-eligible Iowa children and youth with serious mental health needs.

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.  The Lawsuit

Plaintiffs are Medicaid-eligible children in the State of Iowa under the age of twenty-one who have been determined by a licensed practitioner of the healing arts to have a serious emotional disturbance and for whom there is an assessment that intensive home and community-based services are needed to correct or ameliorate their condition. (Compl., ECF No. 1 at 4.) The Defendant is Director Kelly Garcia, in her official capacity only, as Director of Iowa's Department of Health and Human Services ("Iowa HHS"). (Id. at 15.)

Plaintiffs initiated this litigation on January 6, 2023, on behalf of three Named Plaintiffs— C.A., through their next friend P.A.; C.B., through his next friend P.B.; and C.C., through his next friend P.C. Plaintiffs alleged systemic violations of the Medicaid Act's Early and Periodic Screening, Diagnostic, and Treatment ("EPSDT") and reasonable promptness provisions, as well as the Americans with Disabilities Act and Rehabilitation Act. (Id. at ¶¶ 163-196.) Plaintiffs alleged that they were not receiving the Medicaid required intensive home and community-based mental health services that they need to treat or ameliorate their mental health conditions. (Id.)

Because they were not receiving such services, each of the Named Plaintiffs had been previously institutionalized in a psychiatric facility and were at risk of further institutionalization. (Id. at ¶¶ 27-28, 37, 42, 53-55.)

Defendant filed a partial motion to dismiss on February 13, 2023 (Def's. Partial Mot. to Dismiss, ECF No. 22), which the Court denied on May 15, 2023. (Order Den. Def's. Partial Mot. to Dismiss, ECF No. 39.) The Parties began initial discovery efforts, and negotiated a Protective Order, an ESI Protocol, a Scheduling Order and Discovery Plan. *See* Decl. of S. Persson in Supp. of Joint Mot. for Prelim. Approval ("Persson Decl.") ¶ 14; Decl. of L. Reel Schmidt in Supp. of Joint Mot. for Prelim. Approval ("Reel Schmidt Decl.") ¶ 8. The Parties exchanged thousands of pages of documents through initial and supplemental disclosures, and participated in multiple discovery-related conferrals. *Id*. Plaintiffs also conducted the 30(b)(6) deposition of Iowa HHS. (Parties' Joint Submission, ECF No. 40). Shortly thereafter, pursuant to Local Rule 72(b), the Parties filed a joint motion on June 27, 2023 requesting court-sponsored mediation and a three-month stay of proceedings to facilitate settlement discussions. (Joint Mot., ECF No. 47.) The Court granted this motion on June 29, 2023, and scheduled an initial settlement conference for August 11, 2023. (Order Grant. In Part Mot. for Settlement Conf. and Stay Proceed., ECF No. 49; Order Sched. Settlement Conf., ECF No. 50.) On August 11, 2023, the Parties held a settlement conference before federal court Judge Ross Walters.

## B. Interim Agreement

Between August 11, 2023 and September 15, 2023, the Parties engaged in settlement negotiations mediated by the Honorable Judge Walters. *See* Decl. of C. Miller in Supp. of Joint Mot. for Prelim. Approval ("Miller Decl.") ¶ 12; Decl. of K. Lewis in Supp. of Joint Mot. for Prelim. Approval ("Lewis Decl.") ¶ 14; Persson Decl. ¶ 15; Reel Schmidt Decl. ¶ 9. These

discussions resulted in an Interim Settlement Agreement ("Interim Agreement"), which set the framework and timeline for achieving a final settlement. On October 2, 2023, the Parties jointly moved the Court to approve the Interim Agreement and to certify the Parties' agreed-upon class definition. (Joint Mot., ECF No. 63.) On October 12, 2023, the Court granted the motion and certified the case as a class action on behalf of "all Medicaid-eligible children in the State of Iowa under the age of twenty-one, (i) who have been determined by a licensed practitioner of the healing arts as having a serious emotional disturbance, not attributable to an intellectual or developmental disability, and (ii) for whom there is an assessment that intensive home and community-based services are needed to correct or ameliorate their condition." (Order Regarding Joint Mot., ECF No. 65.)

Over the course of the next year, the Parties convened one to two times per month, in accordance with the Interim Agreement, to exchange information and negotiate a final settlement. *See* Miller Decl. ¶ 13; Lewis Decl. ¶¶ 15-16; Persson Decl. ¶ 16; Reel Schmidt Decl. ¶ 10. A key component of the Interim Agreement was the requirement that the Defendant develop an "Implementation Plan" describing how Defendant Iowa HHS would develop the Relevant Services and then roll these services out statewide. (Joint Mot., ECF No. 63, Exhibit A at 3.) The Interim Agreement required Iowa HHS to consult with and timely update Plaintiffs on the Implementation Plan. (*Id.* at 2.)

### C. Settlement Agreement

After more than a year of productive negotiations, the Parties successfully reached a final Settlement Agreement on December 13, 2024. *See* Persson Decl. ¶ 16; Reel Schmidt Decl. ¶ 11.

The purpose of the Settlement Agreement is to ensure that Iowa HHS develops and delivers intensive home and community based mental health services to the Class Members statewide as medically necessary. (Compl., ECF No. 1 at 4.) As the Settlement Agreement makes clear, the Parties share a mutual interest in seeing that these services are delivered to Class Members, consistent with the Parties' shared Goals and Principles as set forth in Appendix B to the Settlement Agreement.

The Settlement Agreement requires that Defendant implement key commitments, described in detail below. These include a) ensuring that the Relevant Services are available statewide and provided to all Class Members eligible to receive them; b) executing the commitments and processes described in the Amended Implementation Plan, including how the Relevant Services will be developed and rolled out; c) identifying Eligibility Criteria and identifying and implementing a standardized assessment process or processes to determine eligibility for the Relevant Services; d) developing a set of data reporting and quality assurance processes to ensure the Relevant Services are delivered in accordance with the terms of the Agreement; and e) along with the Plaintiffs, identifying a mutually agreeable independent monitor to support and evaluate Defendant's progress in implementing the Amended Implementation Plan and Settlement Agreement.

### 1. Development of the Relevant Services

The Settlement Agreement requires that Defendant ensure that four key services are made available statewide to Class Members who meet the eligibility criteria. These services are Intensive Care Coordination (ICC); Intensive In-Home & Community Therapeutic Services (IHCTS); Mobile Crisis Intervention and Stabilization Services (MCIS); and Waiver Services. Together these services are described as the "Relevant Services." The Amended Implementation Plan,

described below contains specific strategies for developing and improving each of the Relevant Services, including specific timelines by which these services will be made available statewide. Additionally, the Amended Implementation Plan addresses the improving and developing provider capacity to effectively provide these services. Under the Amended Implementation Plan, Defendant will develop policies to increase provider capacity, including by conducting a Service Access and Provider Capacity Needs Assessment, as well as through ongoing community engagement. (Joint Mot., ECF No. 63, Exhibit A at 3.)

### 2. Implementation Plan

At the heart of the Settlement Agreement is the already developed Amended Implementation Plan which is a roadmap designed to ensure that the Relevant Services are made available to Class Members statewide. (*See* Appendix C to Exhibit 1.) This comprehensive plan focuses on two critical goals: 1) developing, improving, and strengthening the Relevant Services for Class Members to meet their needs in the least restrictive setting; and 2) developing a quality management and accountability structure for ongoing quality assurance systems improvement for the Class Members. The Amended Implementation Plan will be overseen by an Implementation Team comprised of both professionals and experts, along with representatives from impacted families, youth and provider organizations. The Amended Implementation Plan provides a detailed description of how the Defendant intends to meet the requirements of the Settlement Agreement, and the timelines for such implementation.

### 3. Standardized Screening and Assessments

The Settlement Agreement requires the Defendant to identify and implement a standardized assessment process or processes to determine eligibility for the Relevant Services.

This includes identifying and utilizing (a) an appropriate assessment tool(s); and (b) standardized eligibility criteria. The final assessment tool(s) and criteria will be subject to consent by the Plaintiffs and approval by the Independent Monitor. The Amended Implementation Plan details Defendant's strategies for identifying the new standardized assessment tool, including through community engagement. The Amended Implementation Plan also describes steps for ensuring consistency and accuracy in screenings and assessments, such as the development of universal training for providers.

### 4. Data Reporting and Quality Improvement

The Settlement Agreement further requires the creation of a robust structure for ongoing data collection and reporting, quality assurance, and system improvement. Defendant will develop a publicly available and regularly updated data dashboard to provide transparency and track key statewide performance indicators relevant to the implementation of the Settlement Agreement, including data on the provision of the Relevant Services, the timeliness of such services, and the outcomes for children and families. The Settlement Agreement also requires the development of a Quality Improvement and Accountability Plan describing how the Defendant will ensure ongoing quality assurance.

### 5. Appointment of an Independent Monitor

To ensure that these commitments are met, the Parties have agreed that an Independent Monitor will oversee the Settlement Agreement's implementation, providing regular validation of Defendant's progress in delivering the Relevant Services to Class Members as required and ensuring that the system operates effectively over the long term. The Settlement Agreement further establishes clear exit criteria based on service delivery benchmarks and process benchmarks,

providing objective measures to determine whether Defendant has achieved substantial compliance, which will then result in the case's dismissal.

### III.    **LEGAL STANDARD**

Rule 23(e) of the Federal Rules of Civil Procedure states that a class action "may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). If a proposed settlement would bind class members, "the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Settlement approval "proceeds in two stages." *See Myers v. Iowa Bd. Of Regents*, No. 3:19-cv-00081-SMR-SBJ, 2023 WL 7102158, at *5 (S.D. Iowa 2023) (internal citation omitted). At the first stage, the court makes preliminary determinations about the fairness of the settlement terms, approves the means of notifying class members, and sets a date for the final hearing. *Id.*; *see also* Manual for Complex Litigation (Fourth) § 21.632 (2004).

"A strong public policy favors agreements, and courts should approach them with a presumption in their favor." *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990). In the class action context in particular, "there is an overriding public interest in favor of settlement" because it "minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *4 (E.D. Mo. 2005) (internal citation omitted).

"At the preliminary-approval stage, the fair, reasonable, and adequate standard is lowered." *Myers*, 2023 WL 7102158, at *5 (internal citations omitted). "Because class members will subsequently receive notice and have an opportunity to be heard on the settlement, a Court need

not review the settlement in detail at the preliminary approval stage." *Phillips v. Caliber Home Loans, Inc*., No. 19-cv-2711 (WMW/LIB), 2021 WL 3030648, at *5 (D. Minn. 2021) (internal citations omitted). "[A] proposed settlement is presumptively reasonable at the preliminary approval stage, and there is an accordingly heavy burden of demonstrating otherwise." *Schoenbaum v. E.I. Dupont De Nemours and Co*., No. 4:05-cv-01108 ERW, 2009 WL 4782082, at *3 (E.D. Mo. 2009).

Preliminary approval of a settlement is therefore appropriate "if the proposed settlement falls within the range of possible judicial approval." *Myers*, 2023 WL 7102158, at *5 (internal citations omitted). Under Fed. R. Civ. P. 23(e)(2), a proposed settlement agreement is considered fair, reasonable, and adequate where: (A) "the class representatives and class counsel have adequately represented the class;" (B) "the proposal was negotiated at arm's length;" (C) "the relief provided for the class is adequate;" and (D) "the proposal treats class members equitably relative to each other." The most important factor in determining whether a settlement is fair, reasonable, and adequate is "a balancing of the strength of the plaintiff's case against the terms of the settlement." *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015). District courts may also consider factors such as "procedural fairness to ensure the settlement is not the product of fraud or collusion," "whether a skilled mediator was involved" during the arm's length negotiations, and "the settlement's timing, including whether discovery proceeded to the point where all parties were fully aware of the merits." *Walkinshaw v. CommonSpirit Health*, No. 4:19-cv-3012, 2022 WL 5255287, at *3 (D. Neb. 2022) (internal citations omitted). Courts may also consider "the experience and opinion of counsel on both sides." *Id*.; *see also DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1178 (8th Cir.1995) ("The views of the parties to the settlement must also be considered…class counsel is experienced in this type of litigation.").

IV.    **THE COURT SHOULD GRANT PRELIMINARY APPROVAL**

The Court should grant preliminary approval of the Settlement Agreement. The proposed agreement easily "falls within the range of possible judicial approval." *Myers*, 2023 WL 7102158, at \*5 (internal citations omitted). The Settlement Agreement was negotiated at arm's length over the course of more than a year, after significant discovery and exchange of information. The agreement is not the product of fraud or collusion. The proposed final Settlement Agreement provides substantial benefit to the Class, and this benefit applies equally to all Class Members. In addition, the benefit offered by settlement far outweighs the expense, time, burden, and uncertainty of continuing to litigate this case to trial. Finally, experienced counsel on both sides support this settlement and the benefit it provides.

**A. The Settlement Agreement was negotiated at arm's length after significant discovery and is not the product of fraud or collusion.**

First, the Settlement Agreement was negotiated at arm's length, and is not the product of fraud or collusion. A settlement reached through arm's-length negotiations is generally "afford[ed] the presumption that it is fair and reasonable." *See Cleveland v. Whirlpool Corp.*, No. 20-CV-1906, 2021 WL 5937403, at \*7 (D. Minn. Dec. 16, 2021). In making this assessment the Court, "[t]he court should examine the length of time over which the parties negotiated, whether they used a formal mediation process before a neutral third-party, and preparations for negotiation." *See Myers,* 2023 WL 7102158, at \*7.

In this case, the Settlement Agreement was negotiated over the course of more than a year. The Parties first negotiated an Interim Agreement in September 2023 through mediation facilitated

by the Honorable Judge Walters. (Order Regarding Joint Mot., ECF No. 65.) The Interim Agreement established a framework for reaching the final Settlement Agreement, including extensive regular meetings negotiating the terms and exchanging information and engaging in informal discovery. (*Id*.) Pursuant to the Interim Agreement, the Parties met at least one to two time per month for over a year to negotiate the terms of the final Settlement Agreement. *See* Miller Decl. ¶ 13; Persson Decl. ¶ 16; Reel Schmidt Decl. ¶ 10. Over the course of these many months, Plaintiffs had the opportunity to review data, drafts of planning documents and other informal discovery. Persson Decl. ¶ 16; Reel Schmidt Decl. ¶ 11. These extensive and protracted negotiations demonstrate the arms-length nature of the settlement negotiations.

Plaintiffs also engaged in significant investigation and discovery efforts prior to engaging in settlement negotiations. Before filing the Complaint in January 2023, Plaintiffs' counsel conducted years of research and outreach focused on Iowa's mental and behavioral services for Medicaid-eligible children and youth. *See* Miller Decl. ¶ 10; Persson Decl. ¶ 12. Plaintiffs reviewed publicly available data and reports on Iowa's mental and behavioral health system, including information received through public records requests, and interviewed local stakeholders to gather first-hand insights. Persson Decl. ¶ 12.

Following the filing of the Complaint, Plaintiffs' counsel engaged in significant formal discovery efforts. The Parties exchanged thousands of pages of documents through initial and supplemental disclosures, and participated in multiple discovery-related conferrals. *See* Persson Decl. ¶ 14; Reel Schmidt Decl. ¶ 8. Plaintiffs conducted the 30(b)(6) deposition of Iowa. *Id*. In total, Plaintiffs' counsel has provided declarations indicating that they have dedicated hundreds of hours to pre-filing investigation and post-filing litigation and discovery work, ensuring strong and effective representation for the Class. *See* Miller Decl. ¶¶ 10-13; Lewis Decl. ¶ 14; Persson Decl

¶ 17; Decl. of T. Farrell in Supp. of Joint Mot. for Prelim. Approval ("Farrell Decl.") ¶¶ 8-9. As a result, Plaintiffs' counsel were fully informed about the facts and circumstances of this case when they entered settlement negotiations with the Defendant. *Id*.

To avoid any conflict of interest, the Parties have not negotiated attorney's fees as part of their negotiations on the Settlement Agreement. *See* Persson Decl. ¶ 18. After the Court rules on the Motion for Preliminary Approval of the Settlement Agreement, Plaintiffs anticipate they will separately seek a reasonable award of its attorney's fees and costs. *Id*. Accordingly, this factor weighs in favor of preliminary approval.

## B. The proposed final Settlement Agreement provides substantial benefit to the Class, and equitable relief to all Class Members.

The terms of the Settlement Agreement provide substantial relief for the Class and treats all Class Members equitably relative to each other. Plaintiffs filed this case to ensure that children under age 21 on Medicaid in Iowa receive individualized mental health services that are necessary and appropriate for their needs, including mental health screenings and assessments and the provisions of intensive mental health services with the goal of preserving families and ensuring that children can reside in the most home-like setting appropriate to their needs. (Compl., ECF No. 1 at 4.) This new settlement furthers the Plaintiffs' efforts in fulfilling those litigation objectives.

As described in detail in Section II.C *supra*, the Agreement and its accompanying Amended Implementation Plan will, once implemented, result in a substantial overhaul of the Medicaid services available to Class Members throughout the state. The Agreement requires the Defendant to standardize screening and assessment processes, *see* Section II.C.3, improve care coordination through the development of Intensive Care Coordination services, *see* Section II.C.1, expand in-home and community-based services, *Id.*, strengthen mobile crisis services, *Id.*, address

provider capacity challenges, *Id.*, develop a public set of data reporting, *see* Section II.C.4; and implement a robust quality improvement and accountability framework to ensure timely service delivery across the state, *Id*. In addition, the Agreement requires that a Court-appointed Monitor oversee the settlement to ensure the Agreement is successfully implemented, and sets a series of objective benchmarks that Defendant must meet in order to exit from Court oversight, *see* Section II.C.5. Because the relief described in the Agreement focuses on systemic changes in how Defendant delivers the Relevant Services, all Class Members benefit equally, ensuring equitable treatment across the Class. *See Murphy v. Harpstead*, No. 16-cv-2623 DWF, 2023 WL 4034515, at *6 (D. Minn. June 15, 2023). The Settlement does not grant preferential treatment to any Class Member or subset of Class Members.

### C. The benefit offered by settlement far outweighs the expense and uncertainty of continuing to litigate this case to trial.

The Eighth Circuit has found that "[t]he single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Marshall*, 787 F.3d at 508. The benefits of settlement here far outweigh the complexity, time, and cost of further litigation.

In denying Defendant's partial Motion to Dismiss, this Court concluded that Plaintiffs "plausibly allege[d] violations of the Medicaid Act" and that their claims are not time-barred as they sought only prospective injunctive relief. (Order Den. Def.'s Partial Mot. to Dismiss, ECF No. 39 at 1.) Plaintiffs believe they have a strong case on the merits, but Plaintiffs also recognize that proceeding to trial would delay much-needed relief to Class Members, who continue to suffer without the mental and behavioral health services they need. *See* Miller Decl. ¶ 16; Persson Decl. ¶ 20; Farrell Decl. ¶ 11. Moreover, further litigation would not guarantee relief to Class Members.

However, as discussed above, the Settlement Agreement provides immediate, substantial, and enforceable commitments that address the violations that led Plaintiffs to file suit. Defendant may only exit from these commitments upon a finding that they have substantially complied with the settlement terms.

If this case does not settle now, the Parties would need to resume discovery and prepare for trial. Although the Parties have already exchanged a significant volume of discovery regarding Iowa's mental and behavioral health system for children and youth, this information is now stale. Resuming litigation would require renewed and extensive additional discovery efforts. The Parties agree that settling the case now serves their mutual interest in ensuring that the Relevant Services are delivered to all Class Members, as opposed to the expense and uncertainty of continuing to litigate. *See* Miller Decl. ¶ 16; Persson Decl. ¶ 20; Farrell Decl. ¶ 11; Reel Schmidt Decl. ¶ 15.

**D.  Experienced counsel on both sides support settlement.**

In assessing a proposed settlement agreement, courts may consider the experience and opinion of counsel, as well as the settling parties' views as to the propriety of the settlement. *See Walkinshaw*, 2022 WL 5255287, at *3; *Schoenbaum*, 2009 WL 4782082, at *3; *DeBoer,* 64 F.3d at 1178.

All counsel firmly believe this Settlement to be fair, reasonable, and adequate. *See* Miller Decl. ¶ 17; Lewis Decl. ¶ 17; Persson Decl. ¶ 19; Farrell Decl. ¶ 10; Reel Schmidt Decl. ¶ 14. Plaintiffs' counsel have extensive experience litigating Medicaid, disability rights, and children's rights class action cases. Disability Rights Iowa is the federally designated protection and advocacy organization for individuals with disabilities in Iowa and routinely litigates on behalf of children and adults with disabilities. *See* Miller Decl. ¶¶ 3-8. The National Health Law Program

has extensive expertise in advocating for access to health care and litigating cases pursuant to federal Medicaid and disability law. *See* Lewis Decl. ¶¶ 3-12. Children's Rights is a national advocacy organization that represents children in impact litigation across the country, under a variety of federal constitutional and statutory laws. *See* Persson Decl. ¶¶ 4-11. Ropes & Gray is a global law firm with a track record of pro bono work, including significant contributions to complex civil rights cases. *See* Farrell Decl. ¶¶ 3-7. The Defendant is likewise represented by attorneys with extensive experience litigating the types of claims at issue in this case, including claims pursuant to federal Medicaid and disability law. *See* Reel Schmidt Decl. ¶¶ 3-6. In light of this experience, the opinion of counsel that the Settlement Agreement is fair, reasonable, and adequate is entitled to considerable weight. In addition, Class counsel has discussed this matter with the Named Plaintiffs or their guardians, all of whom support the Agreement. *See* Persson Decl. ¶ 21.

## V.     **THE PROPOSED CLASS NOTICE IS REASONABLE**

In preliminarily approving a class action settlement, the Court may direct appropriate notice to the class. Fed. R. Civ. P. 23(c)(2); *see also* Fed. R. Civ. P. 23(e)(1)(B). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (internal citations omitted). But "[t]he mechanics of the notice process are left to the discretion of the district court, subject only to the broad 'reasonableness' standards imposed by due process." *See Cleveland*, 2021 WL 5937403, at *8-9 (class notice that "contains all the necessary information required to inform Class Members of their rights under the Settlement" and directs class members on where they can obtain more detailed information or ask questions "is fair and reasonable").The notice must be written "in a manner that enables class

members rationally to decide whether they should intervene in the settlement proceedings or otherwise make their views known." *Myers*, 2023 WL 7102158, at *11, *citing Reynolds*, 584 F.2d at 285. However, the notice need not be "extensive" or "remarkably thorough ... to comply with the strictures of due process." *DeBoer*, 64 F.3d at 1176.

The Proposed Class Notice, attached as Exhibit 2, adequately summarizes the litigation and describes the Settlement Agreement. It provides clear instructions on how to obtain more information about the Settlement, and how Class Members may provide comment or objections to the proposed Agreement. This Notice meets Rule 23 and due process requirements, and should be approved.

Likewise, the Proposed Notice Plan, attached as Exhibit 3, is reasonable and adequately meets the due process requirements of Fed. R. Civ. P. 23. The Proposed Notice Plan provides that both Parties will post copies of the Class Notice and the Agreement on their websites and in their offices. *See* Exhibit 3. The Notice Plan describes that the Parties will distribute the Notice, along with the Agreement, to a list of specified individuals, agencies and organizations likely to work with the Class Members and their families, so that these agencies may provide the Notice to potential Class Members. *Id.* These agencies include, inter alia, MCOs, Mental Health Regional Directors, community mental health providers, hospitals, institutional providers, representatives of the Courts, legal associations, and mental health advocacy organizations. *Id.* The Notice Plan also requires the parties to maintain dedicated lines of communication for Class Members to request further information or to ask questions or provide comments about the proposed Agreement. *Id.*

Individual notice to Class Members is not practicable here, where the individual Class Members have not yet been referred for the Relevant Services and therefore not yet easily

identified. Where individual Class Members cannot be identified, "notice by publication… may be substituted." *Hughes v. Kore of Indiana Enter., Inc.*, 731 F.3d 672, 677 (7th Cir. 2013); *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012).

The Parties respectfully propose the following timelines for distribution of the Notice and request that the Court set a schedule for a final approval hearing:

| Event | Date |
|---|---|
| Court's Order on Preliminary Approval | TBD |
| Completion of Notice Plan and Distribution of Class Notice | 30 days after Court's Order of Preliminary Approval |
| Objection Deadline | 5 weeks after Completion of Notice Plan |
| Motion for Final Settlement Approval | 2 weeks after Objection Deadline |
| Plaintiffs to Submit to Court under Seal all Submissions in Support/Objections to the Settlement | 2 weeks after Objection Deadline |
| Final Approval Hearing | TBD |

## VI.    **CONCLUSION**

For the foregoing reasons, the Parties respectfully request that the Court grant preliminary approval of the Settlement, approve the form and manner of Proposed Notice to the Class, and set a schedule for a final hearing to decide whether to grant final approval of the Agreement.

DATED: January 15, 2025

[Signature Page Follows]

Respectfully Submitted,

**DISABILITY RIGHTS IOWA**

*/s/ Cynthia A. Miller*
Cynthia A. Miller
Catherine Johnson
Disability Rights Iowa
666 Walnut Street, Suite 1440
Des Moines, IA 50309
(515) 278-2502
cmiller@driowa.org
cjohnson@driowa.org

**CHILDREN'S RIGHTS**

*/s/ Stephanie Persson*
Stephanie Persson*
Harry Frischer*
Aarti Iyer*
88 Pine Street, Suite 800
New York, New York 10005
(212) 683-2210
spersson@childrensrights.org
hfrischer@childrensrights.org
mkinney@childrensrights.org
aiyer@childrensrights.org
jzou@childrensrights.org

**NATIONAL HEALTH LAW PROGRAM**

*/s/ M. Geron Gadd*
M. Geron Gadd*
Arielle Linsey*
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27514
(984) 278-7660
gadd@healthlaw.org
linsey@healthlaw.org

Kimberly Lewis*

**BRENNA BIRD**

Attorney General of Iowa
*/s/ Lisa Reel Schmidt*
Lisa Reel Schmidt
Deputy Attorney General
Department of Justice
Hoover State Office Building, 2nd Floor
1305 E. Walnut Street
Des Moines, IA 50319
Main: 515-281-8330| Direct: (515) 336-4928
lisa.reelschmidt@ag.iowa.gov

**ATTORNEYS FOR DEFENDANT**

3701 Wilshire Blvd., Suite 750
Los Angeles, CA 90010
(310) 204-6010
lewis@healthlaw.org

**ROPES & GRAY LLP**

/s/ *Timothy R. Farrell*
Timothy R. Farrell*
ROPES & GRAY LLP
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
(312) 845-1209
timothy.farrell@ropesgray.com

\* admitted *pro hac vice*

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was filed electronically with the Clerk of Court on January 15, 2025 to be served by operation of the Court's electronic filing system upon all parties.

*/s/ Stephanie Persson*

Stephanie Persson
Children's Rights
88 Pine Street, Suite 800
New York, New York 10005
(212) 683-2210
spersson@childrensrights.org
