## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF IOWA

|  |  |
|---|---|
| **C.A.** through their next friend P.A., **C.B.** through his next friend P.B., and **C.C.** through his next friend P.C., for themselves and those similarly situated, | C/A No. 4:23-cv-00009-SHL-HCA |
| **Plaintiffs,** | |
| v. | **JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT** |
| **Kelly Garcia**, in her official capacity as Director of the Department of Health and Human Services. | |
| **Defendant.** | |

The Parties jointly seek final approval of their Settlement Agreement (ECF No. 84-2) resolving Plaintiffs' claims on behalf of a certified Class of Medicaid-eligible children and youth in Iowa with serious mental health conditions. The proposed Settlement Agreement, preliminarily approved by this Court on January 24, 2025 (ECF No. 85), amply meets the standard for final approval under Rule 23(e) because it is fair, reasonable, and adequate. The Parties have complied with the Court-approved Notice Plan to inform Class Members of its terms. (Notice Certifying Compliance, ECF No. 86; Miller Decl. ¶¶ 3-5.) The Settlement Agreement provides for critical, enforceable reforms to ensure that Iowa children and youth with serious mental health conditions receive required home and community based behavioral health services and can remain in their homes and communities. Accordingly, following the Final Approval Hearing scheduled for May 7, 2025, the Parties respectfully request that the Court issue an order: (a) granting final approval of the Settlement Agreement; (b) providing for reimbursement by Defendant of Plaintiffs'

1

reasonable attorneys' fees and costs in the negotiated amount; (c) ordering the terms of the Settlement Agreement incorporated as an injunctive order of the Court and retaining jurisdiction over this matter consistent with its terms; and (d) otherwise dismissing this action.

## I.    OVERVIEW OF THE LITIGATION AND SETTLEMENT

Plaintiffs filed this action in January 2023, alleging systemic violations of the Medicaid Act's Early and Periodic Screening, Diagnostic, and Treatment ("EPSDT") and reasonable promptness provisions, as well as Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. (Compl., ECF No. 1 at ¶¶ 163-196.) Plaintiffs sought declaratory and prospective injunctive relief against the Defendant, Director Kelly Garcia, in her official capacity only, as Director of Iowa's Department of Health and Human Services ("Iowa HHS"). The Plaintiffs' purpose for seeking such relief is to ensure the availability of services necessary to treat Plaintiffs' mental health conditions and to help Plaintiffs remain in their homes and communities and avoid institutional care.

Defendant filed a partial motion to dismiss on February 13, 2023 (Def.'s Partial Mot. to Dismiss, ECF No. 22), which the Court denied on May 15, 2023. (Order Den. Def.'s Partial Mot. to Dismiss, ECF No. 39.) The Parties then commenced initial discovery, including the exchange of thousands of pages of documents and a Rule 30(b)(6) deposition of Iowa HHS. (*See* Mem. in Supp. of Joint Mot. for Preliminary Approval of Class Action Settlement, ECF No. 84-1 at 6; Parties' Joint Submission, ECF No. 40.)

In June 2023, the Parties requested court-sponsored mediation and a temporary stay to facilitate settlement discussions, which the Court granted. (Joint Mot., ECF No. 47; Order Grant. In Part Mot. for Settlement Conf. and Stay Proceed., ECF No. 49; Order Sch. Settlement Conf.,

ECF No. 50.) Between August 11 and September 15, 2023, the Parties engaged in settlement negotiations mediated by the Honorable Judge Walters. (*See* Mem. in Supp. of Joint Mot. for Preliminary Approval of Class Action Settlement, ECF No. 84-1 at 6.) These discussions resulted in an Interim Settlement Agreement, which established the framework for final settlement and included an agreed-upon class definition. (*See id.* at 7.) On October 12, 2023, the Court approved the Interim Settlement Agreement and certified the case as a class action on behalf of "all Medicaid-eligible children in the State of Iowa under the age of twenty-one, (i) who have been determined by a licensed practitioner of the healing arts as having a serious emotional disturbance, not attributable to an intellectual or developmental disability, and (ii) for whom there is an assessment that intensive home and community-based services are needed to correct or ameliorate their condition." (Order Reg. Joint Mot., ECF No. 65.)

Over the following year, the Parties held regular settlement meetings—typically once or twice per month—to exchange information, refine proposals, and negotiate the terms of a final Settlement Agreement. (*See* Mem. in Supp. of Joint Mot. for Preliminary Approval of Class Action Settlement, ECF No. 84-1 at 7.) The Parties successfully reached a final Settlement Agreement on December 13, 2024. (*Id.*; *see* Settlement Agreement (or the "Agreement"), ECF No. 84-2.)

On January 24, 2025, the Court granted preliminary approval of the Settlement Agreement; approved the proposed Class Notice and Class Action Notice Plan; and scheduled a Final Approval Hearing for May 7, 2025. (*See* ECF No. 85.) As discussed more fully below, the Parties have now fully complied with the Notice Plan approved by the Court, and no procedural barriers remain to final approval.

The Settlement Agreement offers substantial and meaningful relief to the Class while avoiding the delay, uncertainty, and costs of continued litigation in this complex matter. The

Settlement Agreement requires the statewide development and delivery of four key services, or "Relevant Services," to eligible Class Members. (ECF No. 84-1 at 8-9.) The Agreement also incorporates Iowa HHS's detailed Implementation Plan that sets forth specific strategies and timelines for rolling out these Relevant Services, expanding provider capacity, and ensuring Relevant Services are delivered in the least restrictive setting. (*Id.* at 9.) The Agreement further mandates standardized screening and assessment tools to determine service eligibility, along with a robust framework for data reporting, transparency, and continuous quality improvement. (*Id.* at 9-10.) If approved by this Court, the Settlement Agreement will significantly improve outcomes for Medicaid-eligible Iowa children and youth with serious mental health needs.

## II.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

The Court should grant final approval of the Settlement Agreement after the fairness hearing because the Settlement Agreement is fair, reasonable, and adequate in accordance with Federal Rule of Civil Procedure 23(e); and because the Parties have provided reasonable notice to the Class.

As discussed in the Parties' joint motion for preliminary approval, settlement approval "proceeds in two stages." *See Myers v. Iowa Bd. Of Regents*, No. 3:19-cv-00081-SMR-SBJ, 2023 WL 7102158, at *5 (S.D. Iowa 2023) (internal citation omitted). At the first stage, the court makes a preliminary determination about the fairness of the settlement terms, approves the means of notifying class members and opportunities to be heard in response to the settlement, and sets a date for the final hearing. *Id.*; *see also* Manual for Complex Litigation (Fourth) § 21.632 (2004). Final approval is merited when, after notice is implemented and after a fairness hearing, the court determines that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To grant

4

final approval, "the district court need not undertake the type of detailed investigation that trying the case would involve;" rather, it must simply provide "a basis for determining that its decision rests on well-reasoned conclusions and not mere boilerplate." *See Jones v. Casey's Gen. Stores, Inc.*, 266 F.R.D. 222, 229 (S.D. Iowa 2009) (internal citation omitted); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999) ("recognizing that the purpose of a settlement is to avoid the expense and delay of a trial").

Under Fed. R. Civ. P. 23(e)(2), a proposed settlement agreement is considered fair, reasonable, and adequate where: (A) "the class representatives and class counsel have adequately represented the class;" (B) "the proposal was negotiated at arm's length;" (C) "the relief provided for the class is adequate;" and (D) "the proposal treats class members equitably relative to each other." The Eighth Circuit has observed that "[t]he court's role in reviewing a negotiated class settlement is to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *See Marshall v. Nat'l Football League*, 787 F.3d 502, 509 (8th Cir. 2015) (internal citation omitted). The most important factor in determining whether a settlement is fair, reasonable, and adequate is "a balancing of the strength of the plaintiff's case against the terms of the settlement." *Id.* at 508 (internal citation omitted).

### A. The Settlement is fair, reasonable, and adequate.

As explained below, the Settlement Agreement meets the standard for final approval under Rule 23(e) because it is fair, reasonable, and adequate. The Settlement Agreement was the result of over a year of intensive, arm's-length negotiations informed by significant discovery, pre-filing investigation, and ongoing data exchange. It is not the product of fraud or collusion. The Settlement Agreement also provides substantial, meaningful, enforceable relief to the Class—relief that is both equitable and tailored to the systemic issues at the heart of this case. Final approval is further

warranted in light of the risks, costs, and delays of continued litigation, as well as the strong endorsement of experienced counsel on both sides.

### 1. The Settlement Agreement was negotiated at arm's length after significant discovery and is not the product of fraud or collusion.

First, the Settlement Agreement was negotiated at arm's length, and is not the product of fraud or collusion. Courts generally afford settlements reached through arm's-length negotiations under "the presumption that it is fair and reasonable." *See Cleveland v. Whirlpool Corp.*, No. 20-CV-1906, 2021 WL 5937403, at *7 (D. Minn. Dec. 16, 2021); *see also Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 626 (S.D. Iowa 2016), *aff'd sub nom. Huyer v. Njema*, 847 F.3d 934 (8th Cir. 2017), *and aff'd sub nom. Huyer v. Buckley*, 849 F.3d 395 (8th Cir. 2017) ("Settlement agreements…are presumptively valid. This is particular so in this case, where the Parties settled the case with the aid of an experienced mediator…") (internal citation omitted).

Settlement discussions began with a court-facilitated mediation in August 2023, led by the Honorable Judge Ross Walters. (Order Regarding Joint Mot., ECF No. 65.) Those efforts produced an Interim Settlement Agreement that laid the foundation for a final resolution, including a framework for negotiations and regular meetings to exchange information. (*Id.*) For over a year, the Parties convened monthly to discuss the terms of the final agreement, review data and draft documents, and collaborate on service development. (Miller Decl., ECF No. 84-6 ¶ 13; Persson Decl., ECF No. 84-8 ¶ 16; Reel Schmidt Decl., ECF No. 84-10 ¶ 10.) These negotiations were also informed by Plaintiffs' extensive pre-filing investigation. Before filing suit, Plaintiffs' counsel spent years researching Iowa's behavioral health system, analyzing publicly available data and reports, submitting public records requests, and interviewing stakeholders across the state. (ECF

No. 84-6, ¶ 10; ECF No. 84-8 ¶ 12.)[1] Following the filing of the Complaint, the Parties exchanged thousands of pages of documents, conferred regularly on discovery issues, and conducted a Rule 30(b)(6) deposition of Iowa HHS. (ECF No. 84-8 ¶ 14; ECF No. 84-10 ¶ 8.) And, importantly, attorneys' fees were not negotiated as part of the substantive relief, and were addressed separately, further ensuring the fairness of the result. (ECF No. 84-8 ¶ 18.)

### 2. The Settlement Agreement provides substantial, equitable relief to all Class Members.

The Eighth Circuit has found that "[t]he single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Marshall*, 787 F.3d at 508 (internal citation omitted). Here, final approval of the Agreement is warranted because it provides "substantial benefits to the class." *See Van Horn v. Trickey*, 840 F.2d 604, 608 (8th Cir. 1988) (internal citation omitted).

The Settlement Agreement offers comprehensive, systemic relief that directly responds to the core issues raised in the Complaint. In addition to a number of other commitments, the Agreement requires Defendant to make four essential services—collectively referred to as the "Relevant Services"—available to eligible Class Members statewide. The Plaintiffs have alleged that the four Relevant Services are critical to treating Class Members' serious mental health conditions, and to ensuring that Class Members are not unnecessarily institutionalized but instead appropriately cared for in their homes and communities. In addition to service development, the Agreement mandates a standardized eligibility and assessment process, and improved data practices, including a public-facing data dashboard and monitoring structure to ensure timely and

---

[1] Defendant neither confirms nor disputes Plaintiffs' counsel's preparation prior to filing this lawsuit.

effective service delivery. These systemic improvements are designed to reach every member of the Class, ensuring equitable treatment under the Agreement. *See Murphy v. Harpstead*, No. 16-cv-2623 (DWF), 2023 WL 4034515, at *6 (D. Minn. June 15, 2023); *see also Petrovic*, 200 F.3d at 1152 (upholding final settlement approval where "we do not believe that any subgroup of this class was treated unfairly").

### 3.   Settlement is strongly preferred over continued litigation.

The benefits of settlement here far outweigh the complexity, time, uncertainty, and cost of further litigation. This Court denied Defendant's motion to dismiss, concluding that Plaintiffs plausibly alleged violations of the Medicaid Act and had standing to seek prospective relief. (Order Den. Def.'s Partial Mot. to Dismiss, ECF No. 39 at 1.) Plaintiffs continue to believe their claims are strong on the merits, but both Parties recognize that a trial would likely take years—and would delay critical relief to Class Members who are currently suffering from a lack of adequate services.

Moreover, discovery would need to be reopened and considerably expanded. Trial preparation would be costly and time-consuming for both sides, and the outcome would remain uncertain. In contrast, the Agreement provides immediate and enforceable commitments to reform Iowa's Medicaid mental health system—relief that is both timely, substantial, and meaningful.

### 4.   Experienced counsel support the settlement.

Final approval of the Settlement Agreement should further be granted in light of the experience and opinion of counsel, as well as the settling parties' views as to the propriety of the settlement. *See Keil v. Lopez*, 862 F.3d 685, 698 (8th Cir. 2017) (finding, in upholding final approval of settlement, that "[c]lass counsel's views are entitled to deference, especially since…they have significant experience in class actions and complex litigation.").

Class counsel—Disability Rights Iowa, the National Health Law Program, Children's Rights, and Ropes & Gray LLP—have decades of combined experience in Medicaid law, disability law, federal litigation, and litigation on behalf of children. Disability Rights Iowa is the federally designated protection and advocacy organization for individuals with disabilities in Iowa and routinely litigates on behalf of children and adults with disabilities. (Miller Decl., ECF No. 84-6 ¶¶ 3-8.) The National Health Law Program Case has extensive expertise in advocating for access to health care and litigating cases pursuant to federal Medicaid and disability law. (Lewis Decl., ECF No. 84-7 ¶¶ 3-12.) Children's Rights is a national advocacy organization that represents children in impact litigation across the country, under a variety of federal constitutional and statutory laws. (Persson Decl., ECF No. 84-8 ¶¶ 4-11.) Ropes & Gray is a global law firm with a deep track record of *pro bono* work, including significant contributions to complex civil rights cases. (Farrell Decl., ECF No. 84-9 ¶¶ 3-7.) Defense counsel likewise bring deep expertise in complex civil litigation and Iowa's public systems. (Reel-Schmidt Decl., ECF No. 84-10, ¶¶ 3-6.) In light of this experience, the fact that all counsel strongly support the Settlement Agreement as fair, reasonable, and adequate is entitled to considerable weight. (*See* ECF Nos. 84-6 – 84-10.) In addition, Class counsel has discussed this matter with the Named Plaintiffs or their guardians, all of whom support the Agreement. (ECF No. 84-8 ¶ 21.)

**B.  The Class Notice was Reasonable**

The notice provided to the Class in connection with this Settlement Agreement also meets the standards for final approval under Rule 23.

The Federal Rules provide that "the court must direct notice in a reasonable manner" to all class members who would be bound by the Settlement Agreement. Fed. R. Civ. P. 23(e)(1)(B). The notice must be "reasonably calculated, under all the circumstances, to apprise interested

parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (internal citations omitted). The "mechanics of the notice process are left to the discretion of the district court, subject only to the broad 'reasonableness' standards imposed by due process." *See Cleveland*, 2021 WL 5937403, at *8-9 (approving class notice that "contains all the necessary information required to inform Class Members of their rights under the Settlement" and explains how to access additional information). The notice must be written "in a manner that enables class members rationally to decide whether they should intervene in the settlement proceedings or otherwise make their views known." *Myers*, 2023 WL 7102158, at *11, citing *Reynolds*, 584 F.2d at 285. However, the notice need not be "extensive" or "remarkably thorough." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995); *see also Petrovic*, 200 F.3d at 1153 (upholding class notice as reasonable as it "unquestionably alerted the recipients that they were members of a pending class action, that a settlement had been proposed, and that they had the right to state their objections at a fairness hearing").

This Court approved the Parties' Class Notice and Class Action Notice Plan on January 24, 2025. (*See* ECF No. 85.) As this court already determined, both the Class Notice and the Class Action Notice Plan meet the requirements of Rule 23 and due process. *See Rogowski v. State Farm Life Ins. Co.*, No. 4:22-CV-00203-RK, 2023 WL 5125113, at *3 (W.D. Mo. Apr. 18, 2023) (Rule 23(c) and due process requirements met where class notice was implemented in accordance with court order). The Class Notice clearly summarizes the key terms of the Settlement Agreement and the rights of Class Members, and it provides instructions for obtaining more information and submitting objections or comments. (ECF No. 84-3.) The Class Action Notice Plan describes the procedures for reaching Class Members or their families, including public postings and targeted

distribution to agencies and organizations likely to be in contact with Class Members or their families. (ECF No. 84-4.)

The Parties have now fully complied with their obligations under the Class Action Notice Plan. Defendants have posted the Class Action Notice in the places required by the Class Action Notice Plan, including maintaining the Class Action Notice on their website, and have sent the Class Action Notice to the individuals and entities required by the Class Action Notice Plan. (*See* ECF No. 86; *see also* ECF No. 86-1 (affidavit stating Notice Plan was completed by February 24, 2025).) Plaintiffs likewise have sent the Class Action Notice to relevant contacts as required by the Class Action Notice Plan, maintained the Class Action Notice on their website, and have maintained a dedicated email address for questions relating to the Settlement Agreement. (*See* Miller Decl. ¶¶ 3-5.) As of March 31, 2025, the close of the notice period, the parties have not received any objections or comments from Class Members regarding the Settlement Agreement, nor have any individuals requested to speak at the hearing. (*Id.* ¶¶ 6-7.)

### C.  The Negotiated Attorneys Fees are Reasonable

In addition to approving the Final Settlement Agreement, the attorneys' fees agreed upon by the Parties are fair and reasonable and should be approved. The Federal Rules authorize the recovery of attorneys' fees and expenses in a class action that are allowable under law or the parties' agreement. Fed. R. Civ. P. 23(h). A prevailing plaintiff in a § 1983 civil rights action "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal citation omitted); *see also*

42 U.S.C. § 1988(b).[2] The Parties have agreed to settle all Plaintiffs' claims for attorneys' fees and expenses, including, but not limited to, any claim under 42 U.S.C. § 1988, by agreeing that Plaintiffs are prevailing parties for purposes of reasonable fees and expenses, paying Plaintiffs $1,950,000 for all Plaintiffs' attorneys' fees and costs incurred up to and including the final approval of the Settlement Agreement and by agreeing to pay reasonable attorneys' fees for costs incurred in monitoring and validating Defendants' compliance with the Settlement Agreement capped at $160,000 a year until the anticipated exit date of the agreement, excluding any contested motion practice. *See* Persson Decl. ¶¶ 15-16.

This agreement is reasonable, meets the requirements of the Federal Rules and 42 U.S.C. § 1988, and should be approved. First, as explained above, the Parties reached this agreement through arm's-length negotiations, and only after having reached agreement on the substance of the Settlement Agreement itself. *Id.* ¶¶ 6-14. The Parties exchanged numerous rounds of offers and counter-offers over a period of months and agreed on the above figure on April 11, 2025 only after protracted negotiation. *Id.* ¶ 14.

Second, the agreed-upon award is extremely reasonable given the extensive time and resources Plaintiffs' counsel spent reaching a successful settlement outcome in this case.[3] Prior to filing this action, Plaintiffs spent years investigating the concerns underlying this case, including extensive fact finding and meeting with youth and families across the state.[4] (ECF No. 84-6, ¶ 10; ECF No. 84-8 ¶ 12.). Post-filing, Plaintiffs engaged in motion practice and discovery, including successfully defending against a motion to dismiss. (ECF No. 84-8 ¶¶ 13-14; ECF No. 84-10 ¶¶

---

[2] A plaintiff in a § 1983 case "prevails" for purposes of a fee award under § 1988 "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).
[3] See footnote 1 above.
[4] See footnote 1 above.

7-8.) Finally, for well over a year the Parties engaged in extensive mediation and settlement negotiations. (ECF No. 84-6 ¶ 13; ECF No. 84-8 ¶ 16; ECF No. 84-10 ¶ 10.) In total, Plaintiffs' co-counsel team expended over 4,300 hours, along with additional costs and expenses to reach the successful prosecution and settlement of this case. Persson Decl. ¶ 12. As described in Plaintiffs' attached declaration, this time does not include well over a thousand hours that Plaintiffs removed in extensive billing judgment and additional write-offs while negotiating the fee agreement - including waiving all time for work performed during the early investigation (more than 12 months before the filing), and all time for work performed subsequent to the Parties' fully executed Settlement Agreement on January 6, 2025. *Id.* ¶ 9. As described in Plaintiffs' attached declaration, Plaintiffs have additionally waived all costs. *Id.*

Third, the agreed-upon fee award is fully commensurate with the outcome in this case. Plaintiffs' counsel's significant efforts have resulted in a Settlement Agreement that addresses Plaintiffs' asserted legal rights, and from which thousands of Iowa children will benefit. *Id.* ¶ 26. The Settlement Agreement requires the provision of four critical intensive home and community based behavioral health services to children and youth who need them, and provides a structure to guide the planning and implementation of necessary reforms to ensure those services are available statewide. *Id.* The Settlement Agreement also provides a framework for accountability, including the appointment of a monitor, ongoing reporting obligations, and exit criteria. *Id.* Plaintiffs should be fully compensated for these efforts, in line with the Parties' agreement, and the requirements of Fed. R. Civ. P. 23(h) and 42 U.S.C. § 1988.

## III. THE COURT SHOULD RETAIN JURISDICTION AS SPECIFIED IN THE AGREEMENT

The Parties respectfully request that the Court incorporate the terms of the Settlement Agreement as an injunctive order of the Court, and retain jurisdiction over this action to enforce the court's order under the terms of the Settlement Agreement. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994); *see also* Agreement § VII.56.e ("The parties' proposed judgment and order granting final approval of this settlement will…provide that the Court has and will retain jurisdiction over the judgment and order to enforce"); *see also* ECF No. 63-1 ¶ 19 ("The Court shall retain jurisdiction to enforce the terms of the Final Settlement Agreement and associated court order."). Courts may retain jurisdiction over a case when the "obligation to comply with the terms of the settlement ha[s] been made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Kokkonen*, 511 U.S. at 381; *see also Edwards v. Orchestrate Hosp. Grp., L.L.C.*, No. 4:16CV00063-JAJ-CFB, 2017 WL 2727763, at *1 (S.D. Iowa Mar. 14, 2017) (approving settlement agreement; retaining jurisdiction to enforce its terms); *Maxwell v. Tyson Foods, Inc.*, No. 108CV00017JAJTJS, 2012 WL 12915473, at *1 (S.D. Iowa Nov. 6, 2012) (same). Continuing jurisdiction to enforce an injunctive order is routinely granted in Medicaid Act and ADA class action settlement agreements, particularly where the agreed upon remedies seek systemic reform. *See, e.g. Franklin v. Kinsley*, No. 5:17-CV-581-FL, 2024 WL 2926184, at *1 (E.D.N.C. June 10, 2024); *Hawkins ex rel. Hawkins v. Comm'r. of New Hampshire Dep't. of Health & Hum. Servs.*, No. CIV. 99-143-JD, 2004 WL 166722, at *7 (D.N.H. Jan. 23, 2004).

## IV.    **CONCLUSION**

The Settlement Agreement should be granted final approval under Rule 23(e) because it is fair, reasonable, and adequate, and because the Parties have complied with the Court-approved Notice Plan to inform Class Members of its terms. Accordingly, following the Final Approval Hearing scheduled for May 7, 2025, the Parties respectfully request that the Court issue an order: (a) granting final approval of the Settlement Agreement; (b) providing for reimbursement by Defendant of Plaintiffs' reasonable attorneys' fees and costs in the negotiated amount; (c) ordering the terms of the Settlement Agreement incorporated as an injunctive order of the Court and retaining jurisdiction over this matter consistent with its terms; and (d) otherwise dismissing this action.

**DISABILITY RIGHTS IOWA**

*/s/ Cynthia A. Miller*
Cynthia A. Miller
Catherine Johnson
Disability Rights Iowa
666 Walnut Street, Suite 1440
Des Moines, IA 50309
(515) 278-2502
cmiller@driowa.org
cjohnson@driowa.org

**CHILDREN'S RIGHTS**
*/s/ Stephanie Persson*
Stephanie Persson*
Harry Frischer*
Madeleine M. Kinney*
Aarti Iyer*
Jessica Zou*
88 Pine Street, Suite 800
New York, New York 10005

**BRENNA BIRD**

Attorney General of Iowa
*/s/ Lisa Reel Schmidt*
Lisa Reel Schmidt
Deputy Attorney General
Department of Justice
Hoover State Office Building, 2nd Floor
1305 E. Walnut Street
Des Moines, IA 50319
Main: 515-281-8330| Direct: (515) 336-4928
lisa.reelschmidt@ag.iowa.gov

**ATTORNEYS FOR DEFENDANT**

(212) 683-2210
spersson@childrensrights.org
hfrischer@childrensrights.org
mkinney@childrensrights.org
aiyer@childrensrights.org
jzou@childrensrights.org

**NATIONAL HEALTH LAW PROGRAM**

*/s/ M. Geron Gadd*
M. Geron Gadd*
Arielle Linsey*
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27514
(984) 278-7660
gadd@healthlaw.org
linsey@healthlaw.org

Kimberly Lewis*
3701 Wilshire Blvd., Suite 750
Los Angeles, CA 90010
(310) 204-6010
lewis@healthlaw.org

**ROPES & GRAY LLP**

/s/ *Timothy R. Farrell*
Timothy R. Farrell*
ROPES & GRAY LLP
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
(312) 845-1209
timothy.farrell@ropesgray.com

**\*** admitted *pro hac vice*

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was filed electronically with the Clerk of Court on April 14, 2025 to be served by operation of the Court's electronic filing system upon all parties.

/s/ Stephanie Persson_____

Stephanie Persson
Children's Rights
88 Pine Street, Suite 800
New York, New York 10005
(212) 683-2210
spersson@childrensrights.org